IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

SANDRA SCHUMACHER,
Claimant Below, Petitioner

FILED
April 29, 2025

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

v.) No. 24-ICA-414        (JCN: 2021021470)

BRIGHTSPRING HEALTHCARE SERVICES,
Employer Below, Respondent

## MEMORANDUM DECISION

Petitioner Sandra Schumacher appeals the September 18, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Brightspring Healthcare Services ("Brightspring") timely filed a response.[1] Ms. Schumacher did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's orders, which: (1) denied authorization for a left knee arthroscopy with partial medial meniscectomy and (2) denied a Diagnosis Update Request to add medial meniscus tear and degenerative joint disease of the left knee as compensable conditions.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 16, 2021, Ms. Schumacher presented to MedExpress Clarksburg, and reported an injury to her right arm, back, and right knee. Ms. Schumacher indicated that she was walking across the parking lot when she slipped on gravel and landed on her right and left knees. Upon physical examination, the right patella and right medial knee were tender to palpitation. X-rays of the right knee revealed normal alignment and no evidence of fracture. The assessment was pain in the right knee, lumbar sprain, and contusion of unspecified forearm.

Ms. Schumacher completed an Employees' and Physicians' Report of Occupational Injury form on April 16, 2021. She reported an injury to her right and left knees, right arm, and back, which occurred on the same date when she slipped while walking to the parking lot. Personnel at MedExpress Urgent Care completed the physician's portion of the form

---

[1] Ms. Schumacher is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. Brightspring is represented by Steven K. Wellman, Esq., and James W. Heslep.

1

on April 16, 2021. The diagnoses were right knee sprain, contusion, and back sprain, which were a direct result of an occupational injury.

Ms. Schumacher returned to MedExpress Clarksburg on several additional dates. On April 23, 2021, Ms. Schumacher returned to MedExpress for a follow up regarding her right knee pain. She reported that her right knee continued to cause her pain and swelling, and that she felt a popping in her knee. Ms. Schumacher indicated that she had right knee surgery ten years prior but stated that she did not have any problems with her right knee until this injury. The assessment was pain in right knee, and Ms. Schumacher was referred to physical therapy.

On May 5, 2021, the claim administrator issued an order that held the claim compensable for the diagnoses of pain in right knee, contusion of right arm, and sprain of ligaments of the lumbar spine. On May 7, 2021, Ms. Schumacher returned to MedExpress for a follow up regarding the injury. The assessment was right knee pain. On May 24, 2021, Ms. Schumacher returned to MedExpress and indicated that she was having neck pain and hypertension in addition to her right knee pain. X-rays were taken of the cervical spine. The assessment was pain in right knee and sprain of joints and ligaments of unspecified parts of the neck. On a May 26, 2021, Ms. Schumacher follow up visit at MedExpress regarding her right knee and neck, Ms. Schumacher stated that she was feeling better, but that her neck was still hurting.

On September 27, 2022, Ms. Schumacher presented to Joseph Fazalare, M.D., at United Hospital Center Orthopedics and Sports Medicine, with complaints of right knee pain. Ms. Schumacher complained of constant, sharp, and burning tightness in her knee, and daily swelling of the knee. She also reported instability, popping, locking, clicking, and catching in her right knee. Dr. Fazalare assessed her with chronic pain of the right knee and a positive McMurray test of the right knee. Dr. Fazalare recommended a right knee MRI for a possible meniscus tear.

On November 8, 2022, Ms. Schumacher was seen by David Webber, PA-C, at United Health Hospital Center Orthopedics. Ms. Weber stated that Ms. Schumacher underwent a right knee MRI, which showed tears at the ACL and medial meniscus. She was diagnosed with right knee pain, a rupture of the right ACL, and a right medial meniscus tear. An ACL reconstruction and medial meniscectomy surgery was recommended, and later performed on January 6, 2023. According to the medical evidence, Ms. Schumacher subsequently took physical therapy and showed some improvement.

On June 29, 2023, Ms. Schumacher reported to Dr. Fazalare that she had been doing well since the right ACL reconstruction and partial medial meniscectomy, but she complained of aching, tightness, clicking, and popping in her left knee. She denied any new injury. Dr. Fazalare examined Ms. Schumacher's left knee and assessed left knee pain, for which he ordered an MRI.

On August 16, 2023, a left knee MRI was performed. The impression was tricompartmental osteoarthritis, which was worse and advanced in the medial compartment where there was high grade cartilage loss throughout the majority of the weight bearing surfaces. The MRI also showed degeneration of the medial meniscus, with peripheral extrusion and probable free edge tearing of the body and equivocal undersurface tearing of the posterior horn; tear of the anterior horn of the lateral meniscus; grade 1 versus 2 MCL sprain; and multilocular ganglion along the posterior knee joint.

On September 28, 2023, Dr. Fazalare again examined Ms. Schumacher and reviewed the MRI of her left knee, noting a medial meniscus tear and tricompartmental osteoarthritis. Ms. Schumacher reported increased pain since her right knee surgery. Dr. Fazalare proposed treating her left knee conservatively, and ordered a second MRI for her right knee, which she reported was more painful than the left knee. On November 20, 2023, Ms. Schumacher followed up with Dr. Fazalare and complained of pain in the left knee with instability, locking, and catching. Arthroscopy with a partial medial meniscectomy of the left knee was planned.

On November 28, 2023, Richard Kaplan M.D., performed an independent medical examination of Ms. Schumacher. Dr. Kaplan diagnosed her with a lumbar sprain, forearm contusion, bilateral knee pain, status post right knee anterior cruciate ligament allograft with meniscus repair of January 6, 2023, completed by Dr. Fazalare, and tricompartmental arthritis of the left knee demonstrated by the left knee MRI of August 16, 2023. Dr. Kaplan indicated that there was no trauma to the left knee and stated that the MRI imaging strongly suggested a prolonged degenerative process. Dr. Kaplan further stated that there was no evidence to support any injury to the left knee in the underlying incident or that any future treatment to the left knee was necessary with regard to the April 2021 injury. Accordingly, Dr. Kaplan placed Ms. Schumacher at maximum medical improvement for the compensable injury.

On December 14, 2023, the claim administrator issued an order that denied the request for a left knee arthroscopy with partial medial meniscectomy based on Dr. Kaplan's IME report. Ms. Schumacher protested this order. On January 30, 2024, Dr. Fazalare completed a Diagnosis Update form listing Ms. Schumacher's diagnoses as left medial meniscus tear and degenerative joint disease of the left knee. Dr. Fazalare stated that the diagnoses were found to relate to the compensable injury because Ms. Schumacher had fallen and injured her bilateral knees. Also on January 30, 2024, Dr. Fazalare requested authorization for left knee arthroscopy with partial medial meniscectomy.

On April 30, 2024, Ms. Schumacher gave a deposition regarding her claim. Ms. Schumacher indicated that she was injured while walking across the alleyway to the parking lot when the gravel gave way and both feet slipped out from underneath her and she landed on both knees, mainly on the right. Ms. Schumacher indicated that her right arm got caught on a metal wire attaching the poles between the parking lot and alley, which

stopped her from hitting her face on the concrete. Ms. Schumacher denied having any problems with either of her knees when she went to work on April 16, 2021. Ms. Schumacher indicated that she had surgery on her right knee about thirteen years ago for a torn meniscus, but that she did not have any problems for years after the surgery. Ms. Schumacher stated that she had pain and stiffness in her left knee.

On May 1, 2024, the claim administrator issued an order that denied the request to add medial meniscus tear and degenerative joint disease of the left knee as compensable conditions in the claim. The claim administrator determined that there were no complaints of any left knee injury or symptoms and no left knee diagnosis at the time of the initial treatment and until June 20, 2023. The claim administrator concluded that there was no evidence to support that an injury to the left knee was related to the April 2021 injury. Ms. Schumacher protested this order.

On September 18, 2024, the Board issued an order affirming the claim administrator's orders. The Board found that Ms. Schumacher did not establish that she sustained the conditions of medial meniscus tear and degenerative joint disease of the left knee from the April 16, 2021, injury. The Board further found that Ms. Schumacher failed to establish with medical evidence that left knee arthroscopic surgery is a reasonable and necessary surgery to treat for the compensable condition. It is from this order that Ms. Schumacher now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Ms. Schumacher argues that the Board erred because she injured both of her knees on April 16, 2021, while walking to the parking lot. Further, Ms. Schumacher asserts that the Board failed to give credibility to Dr. Fazalare, who attributed her torn lateral meniscus and tricompartmental arthritis of the left knee to the work injury. We disagree.

As the Supreme Court of West Virginia held, in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016):

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Id*. at 738, 783 S.E.2d at 858, syl. pt. 3.

The Supreme Court clarified its position in *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), holding:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There must still be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Id*. at 294, 879 S.E.2d at 781, syl. pt. 5.

Here, the Board analyzed the claim under *Gill* and *Moore*, and concluded that Ms. Schumacher did not establish, by a preponderance of the evidence, that she sustained the conditions of medial meniscus tear and degenerative joint disease of the left knee from the April 16, 2021, injury. The Board noted that on the date of injury at MedExpress, Ms. Schumacher indicated that she fell on both knees and injured her right arm, back, and right knee. The Board also noted that Ms. Schumacher received regular treatment for her right knee from the time of the injury and following her right knee surgery in January 2023. With respect to the left knee, the Board noted that Ms. Schumacher's complaints of left knee symptoms began on or around June 29, 2023, when she reported them to Dr. Fazalare.

5

Although Ms. Schumacher testified that she reported her left knee complaints to her physical therapist, the physical therapy reports do not support this contention. Further, the Board determined that Dr. Fazalare did not explain how he related the left medial meniscus tear and degenerative joint disease to the compensable injury. Importantly, the Board found that the left knee symptoms did not appear and continuously manifest themselves after the April 16, 2021, injury, and that Ms. Schumacher is thus not entitled to the presumption that the medial meniscal tear and degenerative joint disease of the left knee resulted from the compensable injury. Finally, because the left knee conditions are not compensable in this claim, the Board concluded that the left knee arthroscopy is not reasonable and necessary treatment for the April 16, 2021, injury.

Upon review, we conclude that the Board was not clearly wrong in finding that Ms. Schumacher did not establish that she suffered an injury to her left knee in the course of and resulting from her employment, and that left knee arthroscopy is not reasonable and necessary treatment for the compensable injury. Although we note that Ms. Schumacher initially reported that she fell on both knees, her left knee symptoms did not appear and continuously manifest themselves until well after the April 2021 injury.

We held in *Blackhawk Mining v. Argabright*, No. 22-ICA-262, 2023 WL 3167476, at *3 (W. Va. Ct. App. 2023), that "[w]hen read in unison, *Gill* and *Moore* do not render preexisting injuries compensable. Compensability is limited only to discrete new injuries and disabilities that manifest following the compensable injury." Here, the MRI findings suggest that the meniscal tear and the degenerative joint disease of the left knee are preexisting conditions. We agree with the Board that Dr. Fazalare failed to explain how degenerative knee conditions related to the work injury.

As set forth by the Supreme Court of Appeals of West Virginia "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid so long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's orders, which denied a request to add medial meniscal tear and degenerative joint disease of the left knee as compensable conditions and denied a left knee arthroscopy with partial medial meniscectomy.

Finding no error in the Board's September 18, 2024, order, we affirm.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White